FILED
2022 Mar-29 PM 03:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| CHRISTIE BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-01664-NAD |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER
## AFFIRMING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Christie Bailey filed for review of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner") on her claim for disability benefits based on a T12 compression fracture, hypertension, depression, panic disorder, and post-traumatic stress disorder (PTSD).  Doc. 1.  Bailey applied for disability benefits for the period beginning January 1, 2005 (Doc. 9-5 at 3), but now concedes that her onset date should be August 6, 2018 (Doc. 13 at 1).  The Commissioner denied her claim.  Doc. 9-4 at 5–15.

Pursuant to 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to magistrate judge jurisdiction.  Doc. 12.  After careful consideration of the parties' submissions, the relevant law, and the record as a whole,

1

the court **AFFIRMS** the Commissioner's decision.

## ISSUES FOR REVIEW

In this appeal, Plaintiff Bailey argues that the court should reverse the Commissioner's decision because the Appeals Council erred in declining to review new evidence that Bailey submitted.  Doc. 13 at 2; *see* Doc. 13 at 19–30; Doc. 15 at 1–11; Doc. 17 at 3–9.

In particular, Bailey argues that (I) the Appeals Council erred in determining that the following evidence was not material:  (A) medical records from Dr. Huma Khusro at the CED Mental Health Center dated December 26, 2019; (B) a "Mental Health Source Statement" from Dr. Khusro dated March 26, 2020; and (C) a "Mental Health Source Statement" from Dr. June Nichols dated May 28, 2020.

Bailey also argues that (II) the Appeals Council erred in determining that the following evidence was not chronologically relevant:  (A) medical records from the CED Mental Health Center dated February 13, 2020; and (B) medical records from Dr. Nichols dated May 18, 2020.  *See* Discussion *infra*.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages:   (1) initial determination, including reconsideration; (2) review by an Administrative Law Judge (ALJ); and (3) review by the SSA Appeals Council.  *See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled.  The ALJ must determine the following:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     if not, whether the claimant has a severe impairment or combination of impairments;

(3)     if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)     if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and

(5)     if not, whether, based on the claimant's age, education, and work

experience, he can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211. At step five of the inquiry, the burden temporarily shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner makes that showing, the burden then shifts back to the claimant to show that he cannot perform those jobs. *Id.* So, while the burden temporarily shifts to the Commissioner at step five, the overall burden of proving disability always remains on the claimant. *Id.*

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Social Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)). "The Appeals Council will review a case if it 'receives additional evidence that is new, material, and relates to the period on or before the date of the

4

hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.'" *Pupo v. Commissioner, Soc. Sec. Admin.*, 17 F.4th 1054, 1063 (11th Cir. 2021) (quoting 20 C.F.R. § 416.1470(a)(5)); *see* 20 C.F.R. § 404.970(a)(5).

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act.  The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.**   With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar).  If the ALJ's decision is supported by substantial

evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

**B.** With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

"[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington*, 806 F.3d at 1321. The court reviews de novo whether supplemental evidence is new, material, and chronologically relevant. *Id.*

## BACKGROUND

### A.    Plaintiff Bailey's personal and medical history

Plaintiff Bailey was born on June 17, 1978, and was 40 years old when she applied for disability benefits. Doc. 9-7 at 2. At that time, Bailey last had worked in 2012 as an egg gatherer. Doc. 9-8 at 4.

On August 19, 2014, Bailey had an MRI because she had low back pain due to a fall.  Doc. 9-9 at 44.  The MRI showed a chronic compression deformity of the T12 vertebrae, but no evidence of acute fracture, subluxation, dislocation, or bony injury; the MRI also showed well maintained disc spaces.  Doc. 9-9 at 45.

Subsequent imaging in August 2015 again showed a chronic compression deformity of the T12 vertebrae, but no evidence of acute fracture, subluxation, or dislocation, no acute bony injury, and well maintained disc spaces.  Doc. 9-9 at 9.

On November 4, 2015, Bailey went to Quality of Life Health Services for back pain, and received injections for pain.  Doc. 9-9 at 13.  Treatment notes indicated that Bailey was a heavy smoker.  Doc. 9-9 at 14.  Bailey had a moderate activity level, and cleaned up after the pets that she had in her home.  Doc. 9-9 at 15.

On April 13, 2018, Bailey returned to Quality of Life with complaints of low back pain and depression.  Doc. 9-9 at 19.  Bailey stated that her depression made functioning "somewhat difficult," and that medication did not relieve her symptoms.  Doc. 9-9 at 19.  Bailey was diagnosed with major depressive disorder, recurrent, moderate.  Doc. 9-9 at 19.  She completed a questionnaire about her symptoms for the prior two weeks that indicated severe depression.  Doc. 9-9 at 21.  Bailey was prescribed the medication Celexa for her depression.  Doc. 9-9 at 24.

On April 25, 2018, Bailey returned to Quality of Life for a psychiatric diagnostic evaluation.  Doc. 9-9 at 27. Bailey was very tearful during the evaluation;

she said that she liked to isolate herself from the world and had to avoid places that made her feel panic.  Doc. 9-9 at 27.  Bailey said that her symptoms affected how she felt, thought, and behaved, and prevented her from functioning normally and living life to the fullest.  Doc. 9-9 at 27.  She was diagnosed with major depressive disorder, recurrent, moderate, as well as agoraphobia.  Doc. 9-9 at 30.  Bailey continued medication for her depression.  Doc. 9-9 at 31.

On July 26, 2018, Bailey again returned to Quality of Life with continuing depression and anxiety; she had not been taking her medication.  Doc. 9-9 at 33–36. She was prescribed the medications Trazodone and Paxil.  Doc. 9-9 at 36.

On September 4, 2018, Bailey returned to Quality of Life with fluctuating low back pain that was aggravated by bending.  Doc. 9-9 at 81.  Bailey also presented with anxiety but denied having a depressed mood.  Doc. 9-9 at 81.

On September 15, 2018, Bailey filled out a function report.  Doc. 9-7 at 22– 29.  She stated that she was homeless, and that many times she could not do anything in a normal day.  Doc. 9-7 at 22.  She stated that her daughter had to help her take care of her pets because she could not do so, and that she no longer could socialize, stand or sit for long periods, be in group, or do any shopping.  Doc. 9-7 at 23.  She stated that she sometimes had trouble with personal care.  Doc. 9-7 at 23.  Bailey also stated that she could not do chores around the house.  Doc. 9-7 at 24.  She stated that she shopped only for necessary items when no one else could do so for her.  Doc.

9-7 at 25.  She stated that she could not follow instructions or do many workplace tasks.  Doc. 9-7 at 27–28.

On September 25, 2018, as part of Bailey's disability proceedings, Dr. Thomas Amason reviewed Bailey's records and opined that she could work with some limitations.  Doc. 9-5 at 12–13.

On September 28, 2018, Dr. Robert Estock performed a similar review of medical records for Bailey, and opined that she had medically determinable impairments related to back pain, depression, and anxiety.  Doc. 9-5 at 8.  Dr. Estock opined that Bailey should be able to work with certain limitations, although he noted that she would miss one-to-two days of work per month.  Doc. 9-5 at 14–15.

On December 2, 2018, Bailey went to the Gadsden Regional Medical Center for low back pain.  Doc. 9-4 at 80.  Treatment notes showed that Bailey had mild degenerative changes of the spine, as well as a mild chronic compression fracture of the T12 vertebral body that was unchanged since 2015.  Doc. 9-4 at 80.

On December 20, 2018, Bailey returned to Quality of Life for chronic aching hip pain, depression, and low back pain.  Doc. 9-9 at 85.  Bailey had difficulty concentrating but denied excessive worry.  Doc. 9-9 at 85.  Bailey was compliant with her medication at the time.  Doc. 9-9 at 88.

On June 28, 2019, Bailey returned to Quality of Life and was newly diagnosed with hypertension.  Doc. 9-9 at 92.  She had no associated symptoms and was

prescribed medication.  Doc. 9-9 at 92.  Bailey also was diagnosed with moderate depression.  Doc. 9-9 at 92.

On July 12, 2019, Bailey again went to Quality of Life, and her hypertension was improving.  Doc. 9-9 at 103.  She still was taking her depression medication, and she did not complain of symptoms of depression.  Doc. 9-9 at 103, 110.

On July 26, 2019, Bailey returned to Quality of Life with complaints of back and hip pain.  Doc. 9-9 at 112.  She reported that her back pain was a fluctuating ache that was aggravated by standing and walking.  Doc. 9-9 at 112.  Bailey did not complain of depression; she remained on her medication.  Doc. 9-9 at 112, 115.

Twice in August 2019, Bailey returned to Quality of Life and still did not complain of depression.  Doc. 9-9 at 120, 124.  However, on August 22, 2019, she again went to Quality of Life with back pain and depression.  Doc. 9-9 at 131.

On December 31, 2019, Bailey went to the emergency department at the Gadsden Regional Medical Center for back pain and to refill her pain medication. Doc. 9-4 at 59.  She reported that her pain medication was not working very well, but she also stated that her back had been hurting badly since her pain medicine had run out.  Doc. 9-4 at 59.

On January 2, 2020, Bailey went to Quality of Life with complaints of back pain and depression.  Doc. 9-4 at 19–23.  Treatment notes indicated that Bailey reported that her back pain was worsening and that she was hoping to have back

surgery.  Doc. 9-4 at 19.  She also reported that her depression made functioning "somewhat difficult," and that she was taking Trazodone and Paxil.  Doc. 9-4 at 19. Bailey filled out a depression questionnaire in which she stated that her symptoms made it "somewhat difficult" to "do your work, take care of things at home or get along with other people."  Doc. 9-4 at 20–21.  Based on her answers, her depression was categorized as "moderate."  Doc. 9-4 at 21.  Bailey reported hobbies including adult coloring books and crafts, and stated that she had dogs and cleaned up after them.  Doc. 9-4 at 23.

### B.     Social Security administrative proceedings

#### 1.     Initial application and denial of benefits

On August 6, 2018, Bailey filed an application for disability benefits based on depression and anxiety with an alleged onset date of January 1, 2005.[1]  Doc. 9-5 at 3.  Bailey's application was denied based on a finding that she was not disabled under the Social Security Act.  Doc. 9-5 at 16; Doc. 9-6 at 2.

Bailey requested a hearing before an ALJ.  Doc. 9-6 at 7.

#### 2.     ALJ hearing

On December 4, 2019, the ALJ conducted an in-person hearing on Bailey's application for benefits.  Doc. 9-4 at 36.

At the hearing, Bailey testified that most days she stayed in bed because she

---

[1] Bailey now concedes that her onset date should be August 6, 2018.  Doc. 13 at 1.

was depressed, and that, if she went somewhere, she would start having anxiety and panic.  Doc. 9-4 at 38.  She testified that the longer she has to be in a situation, the worse her anxiety becomes.  Doc. 9-4 at 38.  Bailey testified that she never drove and needed someone else to drive her places.  Doc. 9-4 at 38–39.

Bailey testified that she had constant back pain—which also made her legs go numb—from a deformity in her T12 vertebrae caused by a car accident, and that medication did not effectively help her pain.  Doc. 9-4 at 39.  She testified that she could not stand or sit for long periods of time, and that instead she had to "stand up and walk around for a minute" and then sit back down.  Doc. 9-4 at 40.  Bailey testified that she did not sleep well and was on medication for anxiety, depression, sleeplessness, blood pressure, and pain.  Doc. 9-4 at 40.

In response to questioning from the ALJ, Bailey testified that her depression medication did not work, and that she was depressed more often than she was happy. Doc. 9-4 at 41.  She testified that "well over half" of the time she was so depressed that she could not do regular day-to-day activities.  Doc. 9-4 at 41.  Bailey testified that she was "trying to help lose weight and stuff" because her doctor said it might help with her pain, but she said that she really needed surgery.  Doc. 9-4 at 42.

Bailey testified that she was staying with a cousin, but that she previously had been homeless.  Doc. 9-4 at 42–44.  She stated that her grown son visited her about once per week.  Doc. 9-4 at 44.

A vocational expert (or "VE"), Stephen Cosgrove, then testified that jobs existed in significant numbers in the national economy for a hypothetical individual comparable to Bailey.  Doc. 9-4 at 44–47.  But Cosgrove testified that absenteeism of at least one day per week would be work preclusive.  Doc. 9-4 at 45–46.

### 3.    ALJ decision

On January 28, 2020, the ALJ entered an unfavorable decision on Bailey's application for benefits.  Doc. 9-4 at 2–15.

The ALJ applied the five-part sequential test for disability (*see* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *Winschel*, 631 F.3d at 1178).  The ALJ determined at step one that Bailey had not engaged in substantial gainful activity since August 6, 2018.  Doc. 9-4 at 7.  At step two, the ALJ determined that Bailey had the following severe impairments:  "T12 compression fracture, hypertension, depression, panic disorder, and post-traumatic stress disorder (PTSD)."  Doc. 9-4 at 7.  At step three, the ALJ found that Bailey did not have an impairment or combination of impairments that met or medically equaled the severity of any "Listing of Impairments" in the applicable Social Security regulations.  Doc. 9-4 at 8–9.

Next, the ALJ found that Bailey had the "residual functional capacity" (RFC) to perform medium work except that she could have no exposure to unprotected heights or hazardous machines, could not drive commercially, could only

occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, could only understand, remember, and carry out simple instructions, and could only have occasional contact with the public and infrequent changes in work setting.  Doc. 9-4 at 9–10.

In determining Bailey's RFC, the ALJ articulated the applicable two-step process to consider Bailey's symptoms, then assessed whether the intensity, persistence, and limiting effects of Bailey's subjective symptoms were consistent with the evidence.  Doc. 9-4 at 10.  The ALJ summarized Bailey's hearing testimony, including her testimony about staying in bed due to depression and having anxiety about going places.  Doc. 9-4 at 10.  The ALJ then found that Bailey's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Bailey's testimony about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence or other evidence in the record.  Doc. 9-4 at 10.

The ALJ explained that Bailey did have a history of a T12 compression fracture, but that diagnostic imaging in 2015 showed no acute dislocation or injury and well maintained disc space.  Doc. 9-4 at 10.  The ALJ further stated that the evidence suggested that the impairment did not preclude work at the RFC that the ALJ had determined because evidence showed that the impairment was not as limiting as Bailey alleged.  Doc. 9-4 at 10–11.  The ALJ found that pain from

Bailey's back impairment was well controlled with medication, that her physical examinations were usually normal, and that she still could perform activities of daily living with few limitations despite the impairment.  Doc. 9-4 at 11.  The ALJ found that Bailey's hypertension was not as limiting as alleged, in part because there were no associated symptoms.  Doc. 9-4 at 11–12.

The ALJ found that the record supported "no more than moderate" limitations for Bailey's panic disorder, PTSD, and depression because the impairments were well controlled.  Doc. 9-4 at 12.  The ALJ noted that Bailey had been on antidepressants in the past, but found that she had not been taking antidepressants when she reported severe symptoms in April 2018.  Doc. 9-4 at 12.  The ALJ found that providers generally treated Bailey's symptoms conservatively with medication and recommendations for counseling and exercise.  Doc. 9-4 at 12.  Further, the ALJ found that Bailey had minimal complaints regarding depression in July and August 2019.  Doc. 9-4 at 12.  The ALJ found that the evidence showed that Bailey's symptoms were sufficiently controlled, that she was able to remain socially active and to independently complete daily tasks (which showed an ability to adaptively function), and that her impairments did not cause "debilitating functional limitations."  Doc. 9-4 at 12.  The ALJ also found no "continuous evidence" of "marked or extreme symptoms" of Bailey's depression, panic disorder, or PTSD that would interfere with her ability to work.  Doc. 9-4 at 12.

In addition, the ALJ stated the applicable standard for evaluating medical opinions.  Doc. 9-4 at 13.  The ALJ found the opinion of Dr. Amason persuasive and the opinion of Dr. Estock somewhat persuasive, specifically noting that the record did not support Dr. Estock's opinion regarding Bailey's potentially significant absenteeism.  Doc. 9-4 at 13.

At step four, the ALJ determined that Bailey had no past relevant work.  Doc. 9-4 at 13.  Based on the testimony of the vocational expert, and considering Bailey's age, education, work experience, and RFC, the ALJ found that there were jobs that Bailey could perform in significant numbers in the national economy, including, for example, packer/hand packager and kitchen helper.  Doc. 9-4 at 14.

Accordingly, the ALJ determined that Bailey was not disabled under the Social Security Act from August 6, 2018, until January 28, 2020 (the date of the decision).  Doc. 9-4 at 15.

### 4.      Additional evidence that Bailey submitted to the Appeals Council

Bailey submitted a significant amount of additional evidence for the Appeals Council to consider, including medical records from multiple different sources.  Doc. 9-3 at 9–133.

On December 26, 2019 (i.e., before the date of the ALJ's decision, *see* Background B.3 *supra*), Bailey saw Dr. Huma Khusro at the CED Mental Health Center, where Bailey underwent a mental status examination.  That examination

indicated that Bailey was anxious and tearful, and had dysphoric mood, impaired concentration, and limited insight, but that she was otherwise basically normal. Doc. 9-4 at 30. She was cooperative, and had appropriate appearance, appropriate speech, normal thought content, and normal but restless body movement. Doc. 9-4 at 30. Dr. Khusro diagnosed Bailey with major depressive disorder, panic disorder, and PTSD. Doc. 9-4 at 31. Bailey reported that she became very nervous when she left her house and was on the medications Paxil and Trazodone, but that she did not think they were helping; she also reported panic attacks. Doc. 9-4 at 32. Dr. Khusro added a new prescription for Prozac and encouraged continued therapy. Doc. 9-4 at 32.

On February 13, 2020 (i.e., after the date of the ALJ's decision), Bailey went to CED Mental Health and saw Chardonnay Jackson under the supervision of Dr. Khusro; treatment notes indicated that Bailey's anxiety was worsening outside of the home, and that she did not feel Prozac was helping her depression. Doc. 9-3 at 132. No significant changes in behavior or functioning were reported, and Bailey was restless and fidgety, but no more so than at her prior appointment. Doc. 9-3 at 132–33.

On March 26, 2020, Dr. Khusro from CED Mental Health filled out a one-page "Mental Health Source Statement" for Bailey. Doc. 9-3 at 69. Dr. Khusro indicated that Bailey could not perform activities on a schedule or be punctual within customary tolerances, would be off-task 50% or more of the time, and would miss

15 or more days of work per 30-day period.  Doc. 9-3 at 69.  Dr. Khusro opined that

Bailey's limitations had existed back to August 6, 2018, and stated that Bailey had

a longstanding history of significant anxiety and panic attacks.  Doc. 9-3 at 69.

On May 18, 2020, Dr. June Nichols completed a psychological evaluation of

Bailey.  Doc. 9-3 at 27.  Dr. Nichols reviewed and summarized Bailey's medical

records going back to 2014.  Doc. 9-3 at 27–28.  Dr. Nichols summarized Bailey's

history of illness, stating that Bailey reported that her problems had been continuing

for "a few years," and that Bailey had been receiving mental health treatment for at

least a few months, but that she never had been hospitalized due to any mental health

issues.  Doc. 9-3 at 28.  Bailey cried during Dr. Nichols' evaluation, and stated that

she preferred to stay at home in her "safe place."  Doc. 9-3 at 29.  Dr. Nichols

recounted Bailey's personal history, and performed a mental status evaluation.  Doc.

9-3 at 29–30.   Dr. Nichols stated that Bailey was clean, and had good eye contact,

good speech, and congruent thought processes, but that she had a depressed affect,

and was "uncontrollably tearful."  Doc. 9-3 at 30.  Dr. Nichols found that Bailey's

memory functions were grossly intact, that her thought processes were within normal

limits, and that she had an adequate general fund of knowledge.  Doc. 9-3 at 30.  Dr.

Nichols stated that testing showed a low average/borderline level of intelligence.

Doc. 9-3 at 30.

Dr. Nichols stated that Bailey was homeless and had few daily activities, then

summarized Bailey's reported symptoms for the prior six months.  Doc. 9-3 at 31.

Dr. Nichols also stated that Bailey had been treated by Dr. Khusro since November 2019, and referenced Dr. Khusro's "Mental Health Source Statement" from March 2020.  Doc. 9-3 at 31.  Dr. Nichols stated that, "[b]ased on the evaluation on this date and Dr. Khusro's recent Mental Health Source Statement, it would appear that" Bailey could understand, remember, and carry out very simple instructions, would have difficulty maintaining attention and pace for at least two hours, could not perform on a schedule or within customary punctuality tolerances, could sustain a routine without special supervision, could adjust to routine and infrequent work changes, could interact with supervisors and coworkers, and could be socially appropriate.  Doc. 9-3 at 31.  However, Dr. Nichols stated that, due to her psychological symptoms, Bailey likely would be off-task 40-to-50% of an 8-hour day, and would likely fail to report to work 10-to-15 days out of 30 days.  Doc. 9-3 at 31.  Dr. Nichols then stated that Bailey's "severe depression is such that it interferes with everything that she attempts to do and makes leaving home to deal with any situation difficult."  Doc. 9-3 at 31.  Dr. Nichols diagnosed Bailey with major depressive disorder, recurrent, severe, panic disorder, and PTSD.  Doc. 9-3 at 31.

On May 28, 2020, Dr. Nichols filled out a one-page "Mental Health Source Statement" for Bailey, opining that Bailey could not maintain attention,

concentration, or pace for at least two hours and could not be on-schedule or punctual within customary tolerances.  Doc. 9-3 at 26.  Dr. Nichols also opined that, because of her psychological symptoms, Bailey would be off-task 40-to-50% of an 8-hour workday and would miss 10-to-15 days of work per 30-day period.  Doc. 9-3 at 26. Dr. Nichols opined that she was not sure if Bailey's limitations existed back to January 1, 2005.  Doc. 9-3 at 26.

### 5.    Appeals Council decision

On October 7, 2020, the Appeals Council denied Bailey's request for review of the ALJ's decision.  Doc. 9-3 at 2.  The Appeals Council stated that it found no reason under its rules to review the ALJ's decision.  Doc. 9-3 at 2.

The Appeals Council concluded that some of the evidence that Bailey submitted was not material, and that some was not chronologically relevant.[2]  The Appeals Council determined that the medical records from Dr. Khusro at the CED Mental Health Center dated December 26, 2019, the "Mental Health Source Statement" from Dr. Khusro dated March 26, 2020, and the "Mental Health Source Statement" from Dr. Nichols dated May 28, 2020, did not have a reasonable probability of changing the outcome of the decision.  Doc. 9-3 at 3.  The Appeals Council also determined that medical records from the CED Mental Health Center

---

[2] While Bailey did submit other evidence to the Appeals Council, the court addresses only the evidence that Bailey has raised in this appeal.  *See* Issues For Review *supra*.

dated February 13, 2020, and the medical records from Dr. Nichols dated May 18, 2020, did not relate to the period at issue because the ALJ decided the case only through January 28, 2020. Doc. 9-3 at 3. Because the Appeals Council found no reason to review the ALJ's opinion, the ALJ's decision became the final decision of the Commissioner.

## DISCUSSION

Having carefully considered the record and briefing, the court concludes that the Appeals Council did not err in declining to review the new evidence that Plaintiff Bailey submitted.

**I.      The Appeals Council correctly determined that the new evidence that Plaintiff Bailey submitted was not material, including (A) medical records from Dr. Huma Khusro at the CED Mental Health Center dated December 26, 2019, (B) the "Mental Health Source Statement" from Dr. Khusro dated March 26, 2020, and (C) the "Mental Health Source Statement" from Dr. June Nichols dated May 28, 2020.**

The Appeals Council correctly determined that certain of the new evidence that Plaintiff Bailey submitted—i.e., the medical records from Dr. Huma Khusro at the CED Mental Health Center dated December 26, 2019, the "Mental Health Source Statement" from Dr. Khusro dated March 26, 2020, and the "Mental Health Source Statement" from Dr. June Nichols dated May 28, 2020—did not have a reasonable probability of changing the outcome of the decision. *See Pupo*, 17 F.4th at 1063.[3]

---

[3] Bailey submitted a supplemental brief arguing that the court should consider a recent Eleventh Circuit decision about the Appeals Council's analysis of newly

A.      **Medical records from Dr. Huma Khusro at the CED Mental Health Center dated December 26, 2019**

The Appeals Council did not err in determining that the four pages of medical records from Dr. Huma Khusro at the CED Mental Health Center dated December 26, 2019, did not have a reasonable probability of changing the outcome of the decision. As explained above, the December 26, 2019 records from Dr. Khusro at CED Mental Health showed that Bailey had anxiety and depression, but appeared mostly normal. Doc. 9-4 at 30. When Bailey reported that she did not think her medication was working, Dr. Khusro prescribed alternative medication and continued therapy. Doc. 9-4 at 32.

There is not a reasonable probability that any evidence in the December 26, 2019 records from Dr. Khusro would have changed the outcome of the ALJ's decision. *See Pupo*, 17 F.4th at 1063. In determining Bailey's residual functional capacity (RFC), the ALJ found that Bailey needed no more than moderate limitations for her mental health issues because her doctors had conservatively treated her symptoms with medication and therapy. Doc. 9-4 at 12. Dr. Khusro's records from

---

submitted evidence—that is, *Pupo*, 17 F.4th 1054. Doc. 17. But, in *Pupo*, the Eleventh Circuit concluded that two of the ALJ's factual findings "appear[ed] to be inaccurate" based on the new medical records that the claimant had submitted to the Appeals Council. *Pupo*, 17 F.4th at 1063. As a result, the Eleventh Circuit held that the Appeals Council erred in determining that the new evidence "failed to show a reasonable probability of a different outcome." *Id.* at 1064 (citation omitted). As explained below, unlike the new evidence in *Pupo*, the new evidence in this case does not indicate that the ALJ's factual findings were inaccurate.

December 26, 2019, showed that Dr. Khusro continued to treat Bailey's symptoms with medication and recommendations for therapy.  Doc. 9-4 at 32.

Furthermore, the ALJ found that there was no continuous evidence of "marked or extreme" symptoms with respect to Bailey's mental health issues.  Doc. 9-4 at 12.  Dr. Khusro's records from December 26, 2019, likewise do not show that Bailey had extreme symptoms; rather, those records indicate that Bailey appeared mostly normal.  Doc. 9-4 at 30.

Thus, Dr. Khusro's records from December 26, 2019, are consistent with the ALJ's findings, and there is not a reasonable probability that consideration of those records would have changed the outcome of the ALJ's decision to deny benefits. *See Pupo*, 17 F.4th at 1063.

## B.    "Mental Health Source Statement" from Dr. Khusro dated March 26, 2020

The Appeals Council did not err in determining that the "Mental Health Source Statement" from Dr. Khusro dated March 26, 2020, did not have a reasonable probability of changing the outcome of the decision.  Bailey argues, citing *Simon v. Commissioner*, that the opinion of Dr. Khusro had a reasonable probability of changing the outcome of the decision, in part because the Eleventh Circuit's "treating physician rule" requires that the SSA give considerable weight to the

opinion of a treating physician.[4]  *See* 1 F.4th 908, 911 (11th Cir. 2021) ("*Simon I*"), *opinion withdrawn and superseded on reh'g*, 7 F.4th 1094 (11th Cir. 2021); Doc. 13 at 24–27; Doc. 15 at 5–8.

Historically, the Eleventh Circuit's treating physician rule required that the opinion of a treating physician be given "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citation and quotation marks omitted).  Good cause existed under the following circumstances:  "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240–41.

"The Eleventh Circuit developed the treating physician rule 'as a means to control disability determinations by administrative law judges under the Social Security Act.'" *Glover v. Kijakazi*, No. 4:20-CV-1622-GMB, 2022 WL 256875, at *3 (N.D. Ala. Jan. 26, 2022) (quoting *Black & Decker Disab. Plan v. Nord*, 538 U.S. 822, 829 (2003)).  "The Social Security Administration then formalized the treating physician rule in 1991, implementing regulations that required ALJs to 'give more

---

[4] Bailey submitted a second supplemental brief, again arguing that under *Simon I* the court should apply the Eleventh Circuit's treating physician rule.  Doc. 18 at 1–7. That supplemental brief also notes that Bailey is "deceased" (Doc. 118 at 7 (emphasis omitted)), but provides no other information.  There is no other indication in the record that Bailey may be deceased.

weight to medical opinions' from treating sources and to 'give good reasons . . . for the weight . . . give[n] [a] treating source's medical opinion.'" *Id.* (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)).

But the Commissioner has "full power and authority to make rules and regulations" related to the proof and evidence required to establish a right to benefits under the Social Security Act.  42 U.S.C. § 405(a).  And the SSA has revised its regulations on the consideration of medical opinions for all claims filed on or after March 27, 2017—like the claim in this case.  20 CFR §§ 404.1520c(a), 416.920c(a).

In this regard, a court's "prior judicial construction of a statute" only "trumps an agency construction" when "the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."  *National Cable Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

Bailey has not identified any decision in which the Eleventh Circuit has held that the treating physician rule follows from the "unambiguous terms" of the Social Security Act, and consequently trumps the SSA's regulatory construction.  *See id.* Indeed, "the Eleventh Circuit does not recognize the treating physician rule as independent from the regulations."  *Lemons v. Kijakazi*, No. 4:20-CV-1267-RDP, 2022 WL 19626, at *6 (N.D. Ala. Jan. 3, 2022).

In addition, *Simon I* cannot support application of the treating physician rule

in this case.  The Eleventh Circuit subsequently withdrew the *Simon I* opinion—on which Bailey relies—and entered a superseding opinion.  The Eleventh Circuit's superseding opinion specifically stated:  "[W]e need not and do not consider how the new regulation" for evaluating medical opinions "bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise."  *Simon v. Commissioner, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021).

Moreover, in a recent unpublished opinion, the Eleventh Circuit reasoned that, under the new regulations "[f]or claims filed on or after March 27, 2017, . . . no significant weight is given to statements made by treating physicians as opposed to non-treating medical sources."  *Planas ex rel. A.P. v. Commissioner of Soc. Sec.*, 842 F. App'x 495, 497 n.1 (11th Cir. 2021).

Under the new Social Security regulations, for all claims filed on or after March 27, 2017 (like Bailey's claim in this case), an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including the opinion of a treating physician.  20 CFR § 404.1520c(a).

Instead, under the new regulations, the ALJ considers the persuasiveness of each medical opinion using the following five factors:  (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of

the treatment relationship; (4) specialization; and (5) other factors, including evidence showing that the medical source has familiarity with other evidence or an understanding of the SSA's policies and evidentiary requirements.   20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors, and the ALJ must explain how the ALJ considered those factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may explain how the ALJ considered the other factors, but the ALJ is not required to do so.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under these new regulations (or the treating physician rule, if it still were to apply), Bailey cannot show a reasonable probability that Dr. Khusro's opinions—as stated in the Mental Health Source Statement dated March 26, 2020—would have changed the outcome of the decision.  *See Pupo*, 17 F.4th at 1063.

First, the Mental Health Source Statement is just a one-page form with options for a provider to circle, as well as a small area for comments.  *See* Doc. 9-3 at 69. The form does not include any substantive explanation of Dr. Khusro's opinions or any substantive basis for those opinions.

In this respect, several courts have found that conclusory opinion forms without supporting explanations or evidence should be given little weight.  *E.g.*, *Miller v. Kijakazi*, No. 4:20-CV-656-GMB, 2021 WL 4190632, at *6 (N.D. Ala. Sept. 14, 2021) (citing *Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3

(N.D. Ala. July 16, 2012); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009)).

Regardless, based on the record evidence, the ALJ found that Bailey had no continuous evidence of marked or extreme symptoms, had no more than moderate limitations, and had no debilitating functional limitations.  Doc. 9-4 at 12.  When viewed against the record for supportability and consistency, Dr. Khusro's Mental Health Source Statement would not be persuasive.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

In the March 26, 2020 Mental Health Source Statement, Dr. Khusro indicated that Bailey could not perform activities within a schedule or be punctual within customary tolerances, would be off-task 50% or more of the time, and would miss 15 or more days of work per 30-day period.  Doc. 9-3 at 69.  Dr. Khusro stated that Bailey had a longstanding history of significant anxiety and panic attacks.  Doc. 9-3 at 69.  Dr. Khusro indicated that Bailey would struggle primarily with time management, staying on-task, and attendance, but otherwise could perform in a work setting.  *See* Doc. 9-3 at 69.

But, as noted above, the one-page form provides no explanation or support for the opinions that Bailey would be off-task the majority of the time and absent from work for approximately half of each month.  *See* Doc. 9-3 at 69.  And Dr. Khusro's

other treatment records (*see* Doc. 9-4 at 30–32) do not provide a clear basis for the severity of the limitations included in the Mental Health Source Statement.  Without more, and because of the lack of both any apparent reasoning and an adequate factual basis, the record did not support Dr. Khusro's opinions.

Furthermore, Dr. Khusro's opinions were not consistent with the rest of the record.  While the record showed that Bailey suffered from anxiety, depression, panic, and PTSD (*see, e.g.*, Doc. 9-9 at 19, 30, 33–36, 81), the record nevertheless showed that there were periods where her symptoms were well controlled, when she was taking her medication (*see* Doc. 9-9 at 103, 110, 112, 115, 120, 124).  The record evidence also was inconsistent with the opinions that Bailey would be off-task and miss work.  For example, even when Bailey said that her medication was not working, she also stated that her symptoms made it only "somewhat difficult" to function.  Doc. 9-9 at 19; Doc. 9-4 at 19–21.  In fact, in January 2020, Bailey reported that her hobbies included adult coloring books and crafts, and stated that she had dogs and cleaned up after them—indicating that she was able to focus and function.  Doc. 9-4 at 23.  Thus, there was record evidence that was inconsistent with Dr. Khusro's opinions regarding the severity of Bailey's impairments.

Accordingly, considering the supportability and consistency factors under the new regulations, Bailey cannot show a reasonable probability that Dr. Khusro's opinions would have changed the outcome of the decision.  *See Pupo*, 17 F.4th at

1063.  Even under the treating physician rule, there would be good cause to discount those opinions because Dr. Khusro's one-page Mental Health Source Statement "was not bolstered by the evidence," because the "evidence supported [the ALJ's] contrary finding," and because those opinions were "conclusory."  *See Phillips*, 357 F.3d at 1240–41.

### C.   "Mental Health Source Statement" from Dr. June Nichols dated May 28, 2020

The Appeals Council also did not err in determining that the "Mental Health Source Statement" from Dr. June Nichols dated May 28, 2020, did not have a reasonable probability of changing the outcome of the decision.  Dr. Nichols' May 28, 2020 Mental Health Source Statement was based on her examination of Bailey on May 18, 2020, and on Dr. Khusro's Mental Health Source Statement (*see* Part I.B *supra*).  Doc. 9-3 at 31, 69.  Dr. Nichols opined that, because of Bailey's psychological symptoms, Bailey could not maintain attention, concentration, or pace for 2 hours or more, could not be on-schedule or punctual within customary tolerances, would be off-task 40-to-50% of an 8-hour workday, and would miss 10-to-15 days of work per 30-day period.  Doc. 9-3 at 26.

Dr. Nichols' one-page Mental Health Source Statement was based on—and was substantially similar to—Dr. Khusro's one-page Mental Health Source Statement.  *See* Doc. 9-3 at 69.  Like Dr. Khusro's opinions, the opinions of Dr. Nichols were part of a one-page form that did not provide substantive explanation

or evidence, and that consequently would be given little weight.  *See Miller*, 2021 WL 4190632, at *6.  And, like Dr. Khusro's opinions, Dr. Nichols' opinions included no explanation or evidence to support the supposed severity of Bailey's limitations.

Indeed, Dr. Nichols' own examination notes did not fully support the opinions in the Mental Health Source Statement, because Dr. Nichols stated that Bailey was clean, and had good eye contact, good speech and normal/congruent thought processes, grossly intact memory functions, and an adequate fund of general knowledge.  Doc. 9-3 at 30.

In addition, for the reasons discussed above with regard to Dr. Khusro's opinions, Dr. Nichols' opinions were not consistent with the rest of the record.  *See* Part I.B *supra*.

Thus, for the same reasons discussed above in Part I.B, Bailey cannot show a reasonable probability that Dr. Nichols' opinions would have changed the outcome of the decision.  *See Pupo*, 17 F.4th at 1063.  Under the supportability and consistency factors (*see, e.g.*, 20 C.F.R. § 404.1520c), Dr. Nichols' opinions would be entitled to little weight.  And, even under the treating physician rule, there would be good cause to discount those opinions because Dr. Nichols' one-page Mental Health Source Statement "was not bolstered by the evidence," because the "evidence supported [the ALJ's] contrary finding," and because those opinions were

"conclusory" and "inconsistent with the doctor's own medical records." *See Phillips*, 357 F.3d at 1240–41.

**II.    The Appeals Council correctly determined that the new evidence that Plaintiff Bailey submitted was not chronologically relevant, including (A) medical records from the CED Mental Health Center dated February 13, 2020, and (B) medical records from Dr. June Nichols dated May 18, 2020.**

The Appeals Council correctly determined that other new evidence that Plaintiff Bailey submitted—i.e., medical records from the CED Mental Health Center dated February 13, 2020, and medical records from Dr. June Nichols dated May 18, 2020—did not relate to the period at issue. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b).

Importantly, as explained above, the ALJ decided Bailey's benefits claim only through January 28, 2020. Doc. 9-3 at 3.

New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); *see also Keeton v. Department of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (the Appeals Council shall "evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the [ALJ] hearing decision" (quoting 20 C.F.R. §§ 404.970(b), 416.1470(b))).

### A.     Medical records from the CED Mental Health Center dated February 13, 2020

The Appeals Council did not err in determining that the medical records from the CED Mental Health Center dated February 13, 2020, did not relate to the period at issue.  The February 13, 2020 records from CED Mental Health focused on Bailey's condition on that day; treatment notes indicated Bailey's worsening anxiety and depression, as well as her dissatisfaction with her Prozac medication.  Doc. 9-3 at 132.

Thus, the records focused on Bailey's current condition at that time—i.e., in February 2020.  As a result, the evidence did not relate to the period on or before January 28, 2020 (the date of the ALJ's decision), and those medical records from CED Mental Health were not chronologically relevant.  *See* 20 C.F.R. §§ 404.970(b), 416.1470(b).

### B.     Medical records from Dr. June Nichols dated May 18, 2020

The Appeals Council did not err in determining that the medical records related to the psychological evaluation that Dr. June Nichols performed on Bailey on May 18, 2020, did not relate to the period at issue.

Bailey argues that the additional evidence submitted in this case was chronologically relevant, despite being dated after the ALJ's decision, because this case is similar to *Washington v. Commissioner*.  Doc. 13 at 21–23; *see* 806 F.3d at 1322–23 (recognizing that medical opinions issued after the ALJ's decision may be

chronologically relevant if the opinions stem from medical records from the period before the ALJ's decision).

But *Washington* is distinguishable from this case. In *Washington*, the Eleventh Circuit found that a psychologist's medical opinion evidence that post-dated the ALJ's decision was chronologically relevant for the following reasons: "(1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision." *Hargress v. Social Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (discussing *Washington* 806 F.3d at 1319, 1322–23).

The Eleventh Circuit in *Washington* emphasized that the psychologist had "based his opinions on the combined effects of Mr. Washington's hallucinations and limited cognitive abilities," that the psychologist's "opinions about Mr. Washington's cognitive defects, including that his verbal skills were in the range of borderline or intellectual disability, relate back to the period before the ALJ's decision," and that there was "no assertion or evidence . . . that Mr. Washington's cognitive skills [had] declined in the period following the ALJ's decision." *Washington*, 806 F.3d 1322. Thus (in relevant part), in *Washington*, the Eleventh Circuit concluded that the psychologist's opinion related back to the time period

before the ALJ's decision because the claimant's conditions were the same as they had been before the ALJ's decision.  *See id.*

Critically, the medical conditions at issue in *Washington*—particularly, the claimant's cognitive defects, which had not "declined in the period following the ALJ's decision"—were longstanding conditions that were not subject to fluctuation or material change.  *See id.*  In *Washington*, the psychologist's review of the claimant's conditions, combined with the review of the claimant's past records, made the psychologist's opinion relevant to the time period before the ALJ's decision.  *See id.*  Because the psychologist opined on conditions that had been present and unchanged since prior to the ALJ's decision, the opinion was chronologically relevant.  *See id.*

By contrast, in this case, the record shows that Bailey's anxiety and depression were conditions that *did* change and fluctuate.  For instance, as the ALJ found (Doc. 9-4 at 12), in July and August 2019, Bailey's symptoms appeared to be well managed.  *See* Doc. 9-9 at 103, 110, 122, 120, 124.

Plus, while Dr. Nichols did consider and recount Bailey's medical records going back to 2014, her history of illness, and her personal history (Doc. 9-3 at 27–30), much of the psychological evaluation focused on a mental status examination of Bailey that Dr. Nichols conducted at the time of the appointment.  At most, Dr. Nichols' psychological evaluation focused on the 6 months prior to that appointment

in May 2020—a time period that only narrowly overlapped with the time period that the ALJ considered, which ended in January 2020.  Doc. 9-3 at 29–31.

In addition, Dr. Nichols' assessment of Bailey's functional limitations was based on "the evaluation on th[e] date" of the appointment, and on Dr. Khusro's March 2020 Mental Health Source Statement, both of which were completed after the ALJ's January 2020 decision.  Doc. 9-3 at 31, 69.

Thus, unlike in *Washington*, Dr. Nichols was assessing conditions subject to changing symptoms and severity—not conditions like the claimant's cognitive defects in *Washington* that remained relatively static.  *See Washington*, 806 F.3d at 1322.  And Dr. Nichols' evaluation of Bailey primarily reflected Bailey's condition *after* the date of the ALJ's decision.  Consequently, the related medical records were not chronologically relevant.  *See* 20 C.F.R. §§ 404.970(b), 416.1470(b).

Finally, the court should affirm the Appeals Council's decision not to review new evidence unless the Appeals Council failed to consider new evidence that was both chronologically relevant *and* material.  *See Raices v. Commissioner of Soc. Sec.*, 805 F. App'x 836, 837 (11th Cir. 2020).

Here, even if the medical records from Dr. June Nichols dated May 18, 2020, conceivably were chronologically relevant, there still is not a reasonable probability that those records would have changed the outcome of the decision.  *See Pupo*, 17 F.4th 1063.  For the reasons discussed above with respect to Dr. Nichols' Mental

Health Source Statement dated May 28, 2020 (*see* Part I.C *supra*), the evidence from Dr. Nichols is inconsistent with and not supported by the other record evidence. Accordingly, there is not a reasonable probability that the evidence from Dr. Nichols would have changed the outcome of the decision.

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the court **AFFIRMS** the Commissioner's decision.  The court separately will enter final judgment.

**DONE** and **ORDERED** this March 29, 2022.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE